UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANN GRILLO,<br><br>Plaintiff,<br><br>v.<br><br>METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, et al.,<br><br>Defendants. | No. 18 CV 5607<br><br>Judge Manish S. Shah |

### ORDER

Defendants' motion to dismiss [30] is granted in part, denied in part. Grillo has not stated a *Monell* claim against the District. The remainder of the motion is denied. A status hearing remains set for April 17, 2019, at 9:30 a.m.

### STATEMENT

Plaintiff Dann Grillo was a truck driver for the Metropolitan Water Reclamation District of Greater Chicago. He brings statutory and constitutional claims against the District and two of its employees for actions taken against him during his employment, including claims under 42 U.S.C. § 1983 for disability discrimination and First Amendment retaliation. Defendants move to dismiss the constitutional claims and to strike some of the complaint's allegations.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I accept the complaint's factual allegations as true and draw reasonable inferences in Grillo's favor. *Id.* at 678–79.

*Equal Protection (Count VI)*

Grillo claims that defendants violated his equal protection rights by discriminating against him based on his disabilities. Defendants argue that the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, forecloses § 1983 claims based on disability discrimination. Defendants point to *Grey v. Wilburn*, 270 F.3d 607, 610–11 (8th Cir. 2001), in which the Eighth Circuit held that a plaintiff could not pursue a § 1983 equal protection claim based on the same facts as an ADA claim. But other courts have held otherwise, finding that the ADA does not preclude § 1983 claims for disability discrimination that allege constitutional violations, even where

the constitutional claims "run parallel" to statutory claims. *See Bullington v. Bedford Cty., Tennessee*, 905 F.3d 467, 470–78 (6th Cir. 2018); *Holmes v. Godinez*, 311 F.R.D. 177, 229–32 (N.D. Ill. 2015); *Baumgardner v. Cty. of Cook*, 108 F.Supp.2d 1041, 1053 (N.D. Ill. 2000). The Seventh Circuit has suggested that it follows the latter approach. *See Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 281 (7th Cir. 2003) (in dicta, acknowledging *Grey* but stating that "[o]ur court … has consistently declined to find that other similar statutes preclude § 1983 relief when the § 1983 claim is based directly on a constitutional violation, not a statutory one"); *Trigg v. Fort Wayne Cmty. Sch.*, 766 F.2d 299, 302 (7th Cir. 1985) ("A plaintiff may sue her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's comprehensive remedial scheme, even if the same facts would suggest a violation of Title VII."). So, Grillo can bring a § 1983 claim for a violation of his constitutional rights, but not his statutory rights. For example, his allegations regarding retaliation for asserting his rights under the ADA do not state a constitutional claim. But the complaint also alleges that defendants violated Grillo's constitutional rights by discriminating against him based on his disabilities, and those allegations state an independent constitutional claim that the ADA does not preclude.

A plaintiff need only allege the type of discrimination, by whom, and when. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). Contrary to defendants' assertion, Grillo does not need to identify similarly-situated comparators at this stage. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014). Grillo has sufficiently alleged that defendants took adverse actions against him because of his disabilities, including by alleging that they treated him differently from those who did not have disabilities. [27] ¶ 22.* The allegations supporting a causal link between Grillo's disabilities and the adverse actions are scant, but for now, what he has alleged is enough. Defendants take issue with Grillo's failure to tie each adverse action to a specific cause. He alleges a list of adverse actions and attributes them generally to his disability, age, "and/or" protected speech. Grillo can plead alternative theories, so this kitchen-sink approach is not a reason to dismiss the claim. *See* Fed. R. Civ. P. 8(d)(2). Ultimately, Grillo will have to prove that defendants took specific action against him because of an improper basis. He may not guess or throw all theories against the wall to see which one sticks. But that moment of proof is a later stage in the case.

Grillo must also allege a "materially adverse employment action." *Cf. Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 635 (7th Cir. 2013) (holding that a race-based § 1983 equal protection claim must allege "a materially adverse employment action"). To be materially adverse, the action must cause "a significant change in employment status." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016). Though many of the complaint's adverse action allegations do not rise to that level, some—like the

---

* Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings.

2

allegation that defendants denied Grillo's requests to return to work after an injury—are plausible materially adverse employment actions.

The parties should keep in mind that people with disabilities are not a suspect class (or a quasi-suspect class). *See United States v. Harris*, 197 F.3d 870, 876 (7th Cir. 1999). As a result, people with disabilities are not afforded heightened constitutional protection, and Grillo will have to show "that [defendants'] discriminatory intent was not rationally related to a legitimate state interest." *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 950–51 (7th Cir. 2002) (applying rational-basis review to a sexual orientation-based § 1983 equal protection claim). *See also Bullington*, 905 F.3d at 477; *A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 263 F.Supp.3d 705, 727–28 (N.D. Ill. 2017), *aff'd*, 881 F.3d 587 (7th Cir. 2018).

*First Amendment (Count VII)*

Grillo alleges that he "repeatedly spoke up and complained about health and safety issues concerning the District's trucks … and the District's buildings," and that Grillo "was a union representative and was very outspoken in addressing health and safety issues." [27] ¶¶ 63–64. Defendants argue that Grillo's speech is not constitutionally protected. Because Grillo was a public employee, his speech is only protected if he "spoke as a citizen on a matter of public concern." *Graber v. Clarke*, 763 F.3d 888, 895 (7th Cir. 2014). If Grillo reported the health and safety issues pursuant to his official duties as a truck driver, as defendants argue, then he was not speaking as a private citizen and the First Amendment does not protect his speech. But it is reasonable to infer that Grillo spoke as a union representative, which means he was speaking as a citizen. *See id.* ("[I]f the public employee is speaking in his capacity as a union representative, he is speaking as a citizen.").

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* (citation omitted). It is plausible that speech about "health and safety issues" is a matter of public concern. After discovery yields more context to Grillo's statement, that determination could change. As defendants point out, if Grillo only spoke up for his own interests—complaining about the trucks he had to drive—then that would be unprotected speech regarding private concerns. But as alleged, it is plausible that Grillo's speech was on a matter of public concern.

For a First Amendment retaliation claim, the required "adverse action" is different from the "materially adverse employment action" required for an equal protection claim. *See Power v. Summers*, 226 F.3d 815, 820–21 (7th Cir. 2000). "Any deprivation under color of law that is likely to deter the exercise of free speech, whether by an employee or anyone else, is actionable." *Id.* at 820. At least some of the actions that defendants allegedly took against Grillo (again, like not letting him come back to work after an injury) could plausibly deter someone from speaking out.

Monell *Claim*

Grillo has not plausibly alleged a *Monell* claim. To do so, he must allege "(1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 727 (7th Cir. 2014). Grillo contends he has alleged the second and third.

The complaint alleges that the District has an unwritten "policy and practice" of failing to investigate discrimination and discipline those who perpetrate it, [27] ¶ 53, but that is a conclusion that I need not accept as true. The complaint's factual allegations show, at most, that two employees discriminated against one person (Grillo) and do not support the inference of a sufficiently widespread custom. *See Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (*Monell* focuses on "institutional behavior" and requires "*a widespread practice* that permeates a critical mass of an institutional body," not "misbehavior by one or a group of officials" that is unconnected to the institution's practices as a whole (emphasis in original)).

Defendants argue that Grillo's conclusory allegation that the individual defendants—a master mechanic and an assistant master mechanic—are final policymakers for the District is contradicted by the Metropolitan Water Reclamation District Act. *See* 70 ILCS 2605/4 (stating that the "board of commissioners is the corporate authority of the sanitary district, and … shall establish the policies and goals of the sanitary district"). Grillo does not respond to the argument, and anyway, I agree that the allegations do not support the conclusion that the individual defendants have final policymaking authority. The *Monell* theory is dismissed from the equal protection claim.

Grillo's allegation of a policy in his First Amendment claim, [27] ¶ 67, is even more conclusory than his allegations in his equal protection claim. To the extent Grillo attempted to allege *Monell* liability against the District for his First Amendment claim, that theory is dismissed too.

*Motion to Strike*

Defendants move to strike the complaint's two attachments (over 20 pages of allegations titled "Chronology of Adverse, Disparate, and Hostile Treatment" and "Further Chronology"), time-barred allegations, workers' compensation-related allegations, and the punitive damages claim against the District. "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Grillo agreed that defendants are not required to answer the attachments, so I have not considered them in resolving the motion to dismiss, and their presence

4

causes no prejudice to defendants. (Grillo should understand that the attachments are of limited evidentiary value because they are inadmissible if he offers them to prove the truth of the matters asserted. Fed. R. Evid. 801, 802.) The time-barred allegations and those that relate to workers' compensation are relevant to some of Grillo's claims. And defendants withdrew their motion to strike the punitive damages allegations against the District, since Grillo clarified that he is not seeking them. Defendants' motion to strike is denied.

ENTER:

                                                                                                                              _____
                                                                                       Manish S. Shah
                                                                                       United States District Judge

Date: April 16, 2019